IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENDELL BURNETT,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>MACY'S WEST STORES, INC.,<br><br>　　　　Defendant.<br>_____/ | Case No. 1:11-cv-01277 LJO SMS<br><br>ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION<br><br>(Doc. 6) |

Defendant Macy's West Stores, Inc. ("Macy's") has filed a motion to compel Plaintiff Kendell Burnett ("Burnett") to arbitrate the claims presented in this case. The motion is unopposed.[1] Pursuant to Local Rule 230(g), the Court deems this matter suitable for decision without oral argument, and the hearing scheduled for October 12, 2011 is VACATED. For all the reasons set forth below, the Court GRANTS the motion and DISMISSES this action.

I.  **BACKGROUND**

　　A.  **Procedural History**

This civil action was removed to this Court from the Tulare County Superior Court on August 1, 2011. (Doc. 1.) Burnett alleges that her former employer, Macy's, discriminated against her when she was pregnant in 2010. (Id. at 7.) Specifically, Burnett alleges that Macy's refused to allow her to sit on the job while she was pregnant and terminated her employment while she was still on maternity

---

[1] Pursuant to Local Rule 230(c), any opposition to the granting of a motion is to be filed and served no less than fourteen days preceding the noticed hearing date. This matter was set for hearing on October 12, 2011 (Doc. 6); however, as of the date of this order, Burnett has not filed an opposition. The motion therefore stands unopposed.

1

leave. (Id. at 8-9.) Burnett now seeks to recover damages for violations of the California Fair Housing and Employment Act ("FEHA"). (Id. at 7-9.)

On September 7, 2011, Macy's filed the instant motion to compel arbitration. (Doc. 6.) In its motion, Macy's asserts that Burnett's FEHA claims fall within the scope of the arbitration agreement Burnett agreed to when she was first hired in October 2009. (Id. at 11, 14-19.) Accordingly, Macy's seeks to enforce the arbitration agreement and either have this action dismissed in its entirety or stayed pending resolution of arbitration. (Id. at 20.)

**B.     The Arbitration Agreement**

Macy's has implemented a dispute resolution program known as Solutions InSTORE ("SIS") to address workplace disputes. (Doc. 6-2, Noeth Decl., ¶ 4.) The program contains four steps. (Id. ¶ 8.) First, under the "Open Door" policy, employees are encouraged to bring their concerns to a supervisor or local management team member. (Id. ¶ 9.) Second, if unsatisfied with the response, an employee may submit a written request to human resources for an investigation into the matter. (Id.) Third, if unsatisfied with the findings of the investigation and if the matter involves legally protected rights, an employee may request an official investigation by either the Office of SIS or a Peer Review Panel. (Id.) Fourth, if the matter is still unresolved after completion of the official investigation, it is to be resolved through binding arbitration. (Id.)

Aspects of SIS arbitration include: (a) the filing fee is equal to one day's worth of wages for the employee, not to exceed $125; the arbitrator, however, may exempt the employee from the filing fee; (b) Macy's will have an attorney present only if the employee decides to have an attorney present; (c) Macy's will reimburse the employee for some of the legal fees incurred; (d) discovery is permitted; (e) the arbitrator is jointly selected by the parties and may grant any relief available under applicable law; (f) the arbitrator is required to submit a written decision specifying the remedies that are appropriate; and (g) mutuality: Macy's must resolve all its disputes through arbitration. (Id. ¶¶ 14-15.)

Employees have thirty days from the date of hire to opt out of the arbitration provision. (Id. ¶ 10.) All new employees are provided with a brochure that summarizes the SIS program, including the arbitration provision. (Id. ¶¶ 18-19.) Enclosed in the brochure is an opt-out election form, which an employee must complete and mail to the Office of SIS if he or she wishes to opt out of the arbitration

2

provision.  (Id. ¶¶ 20-21, Ex. C.)  All new employees are required to sign a "Solutions InSTORE New Hire Acknowledgment" form, indicating that he or she has received the brochure and understands that he or she may opt-out of the arbitration provision.  (Id. ¶ 22.)

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that written agreements to settle a controversy through arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  A court's role in applying the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.  If the response is affirmative on both counts, the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms."  Chiron Corp. v. Ortho Diagnostic Systems, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted).  The FAA leaves no place for the exercise of discretion by a district court; the court *must* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.  Dean Witter Reynolds v. Byrd, 470 U.S. 213, 218 (1985).

In enacting the FAA, "Congress declared a national policy favoring arbitration . . . ."  Southland Corp. v. Keating, 465 U.S. 1, 10 (1984).  See Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 475 n.8 (9th Cir. 1991) ("The [FAA] reflects the strong Congressional policy favoring arbitration by making such clauses 'valid, irrevocable, and enforceable.'") (quoting 9 U.S.C. § 2).  Thus, courts have consistently applied a "liberal federal policy favoring arbitration agreements."  Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983).  "[A]ny doubts concerning the scope of arbitrable issues [are to] be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  Id. at 24-25.

## III.  DISCUSSION

### A.  The SIS Arbitration Agreement is Valid

#### 1.  The Agreement is a Valid Contract

To determine the validity of an arbitration agreement, general state-law principles of contract formation and interpretation apply.  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995);

3

Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996).  Under California contract law, the elements for a viable contract are (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration.  United States ex rel. Oliver v. Parsons Co., 195 F.3d 457, 462 (9th Cir. 1999).

Here, there is no question that the parties were capable of contracting and that the arbitration agreement related to a lawful matter.  Nor is there any dispute as to whether the arbitration agreement was supported by sufficient consideration.  See Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1108 (9th Cir. 2002) (an employer's promise to be bound by the arbitration process itself serves as adequate consideration); see also Strotz v. Dean Witter Reynolds, 223 Cal. App. 3d 208, 216 (1990) ("Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other."), overruled on other grounds by Rosenthal v. Great Western Fin. Secs. Corp., 14 Cal. 4th 394 (1996).  Thus, to the extent there is *any* question as to the validity of the arbitration agreement at issue in this case, it pertains to whether Burnett actually consented to the agreement.

The following facts are undisputed on this issue.  On October 19, 2009, Burnett electronically signed the "Solutions InSTORE New Hire Acknowledgment" form.  (Doc. 6-1, Odendahl Decl., ¶ 12, Ex. G.)  By singing the acknowledgment form, Burnett represented, among other things: "I understand that if I do not wish to be covered by Step 4, Arbitration, the only way to notify the Company about my choice is by postmarking my [opt-out] election form within 30 days of hire and mailing it to the Office of Solutions InSTORE."  (Id., Ex. A.)  A review of the records maintained by the Office of SIS reveals that Burnett never mailed-in the opt-out form, nor did she ever contact the Office of SIS by telephone.  (Doc. 6-2, Noeth Decl., ¶¶ 26-31.)

In general, a person's "silence or inaction does not constitute acceptance of an offer."  Najd, 294 F.3d at 1109 (quoting Golden Eagle Ins. Co. v. Foremost Ins. Co., 20 Cal. App. 4th 1372, 1385 (1993)).  However, "where circumstances or the previous course of dealing between the parties places the offeree under a duty to act or be bound, his silence or inactivity will constitute his assent."  Najd, 294 F.3d at 1109 (quoting Beatty Safway Scaffold, Inc. v. B.H. Skrable, 180 Cal. App. 2d 650, 655 (1960)).  Such was the case here.  Macy's new hire brochure clearly explained to Burnett that she was covered by the

arbitration provision and that if she wanted to opt-out, she had to mail-in the arbitration election form within thirty days of being hired. Burnett affirmatively represented that she understood these terms. Burnett, however, never submitted the arbitration opt-out election form. "When, as here, inaction is indistinguishable from overt acceptance, [the] court may conclude that the parties have [indeed] come to [an] agreement." Najd, 294 F.3d at 1109.

All the elements for a viable contract are present here. Accordingly, the Court concludes that the SIS arbitration agreement is a valid contract.[2]

### 2. The Agreement is Valid Under Armendariz

The California Supreme Court has held that an arbitration agreement covering statutory rights established "for a public reason," such as those under FEHA, must be subjected to particular scrutiny by the courts. Armendariz v. Foundation Health Psychcare Servs., Inc., 24 Cal. 4th 83, 100-01 (2000). Such an agreement is lawful only if it: (1) provides for neutral arbitrators; (2) provides for more than minimal discovery; (3) requires a written award; (4) provides all the types of relief that would otherwise be available in court; and (5) does not require employees to pay unreasonable costs or any arbitrator's fees or expenses as a condition of access to the arbitration forum. Id. at 102 (quoting Cole v. Burns Int'l Security Servs., 105 F.3d 1465, 1482 (D.C. Cir. 1997)).

The arbitration agreement at issue in this case satisfies all the Armendariz requirements. The agreement: (1) requires the arbitrator to be jointly selected by the parties; (2) allows the parties to issue twenty interrogatories and to conduct three depositions, and the arbitrator may award any party further discovery if warranted; (3) requires the arbitrator to submit a written decision specifying any remedies found appropriate; (4) allows the arbitrator to grant any relief available under applicable law; and (5) limits the filing fee to $125 and requires Macy's to reimburse the employee up to $2,500 in legal fees or $500 in incidental costs. (Doc. 6-2, Noeth Decl., ¶¶ 14-15.) Accordingly, the Court concludes that

---

[2] Macy's also contends that the arbitration agreement is not unconscionable. It is true that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 687 (1996). However, the Court need not reach that issue. Burnett has not raised the defense. See Engalla v. Permanente Medical Group, Inc., 15 Cal. 4th 951, 972 (1997) (In resolving a petition to compel arbitration, "[t]he petitioner bears the burden of proving the existence of a valid agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense."); Mission Viejo Emergency Medical Associates v. Beta Healthcare Group, 197 Cal. App. 4th 1146, 1158 (2011) (the party opposing arbitration carries the burden of proving the arbitration provision is unconscionable).

the arbitration agreement is valid under Armendariz, and Burnett's FEHA claims are arbitrable under California law.[3]

### B.    The SIS Arbitration Agreement Encompasses Burnett's Claims

In determining whether an arbitration agreement encompasses particular claims, a court looks to the plain language of the agreement. "In the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail . . . ." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85 (1960). "[U]nless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute[,]" arbitration should not be denied on this basis. Id. at 582-83. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." Moses H. Cone, 460 U.S. at 24-25.

It is clear from the plain language of the agreement that Burnett's FEHA claims fall within the scope of the arbitration provision. By its own terms, the arbitration provision covers all employment-related claims arising under California law, including discrimination and wrongful termination. The arbitration provision provides, in relevant part:

> All unasserted employment-related claims as of January 1, 2007 arising under federal, state, or local statutory or common law, shall be subject to arbitration. Merely by way of example, Employment-Related Claims include, but are not limited to, claims arising under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), the Fair Labor Standards Act (FLSA), 42 U.S.C. § 1981, including amendments to all the foregoing statutes, the Employee Polygraph Protection Act, *state discrimination statutes, state statutes, and/or common law regulating employment termination*, misappropriation, breach of the duty of loyalty, the law of contract or the law of tort; including, but not limited to, claims for malicious prosecution, wrongful discharge, wrongful arrest/wrongful imprisonment, intentional/negligent infliction of emotional distress or defamation.

(Doc. 6-2 at 19-20) (emphasis added). Accordingly, the Court concludes that Burnett's FEHA claims are encompassed by the parties' arbitration agreement and must be arbitrated.

---

[3] A few courts have questioned the vitality of these requirements in light of the United States Supreme Court's decision in AT&T Mobility LLC v. Concepcion, __ U.S. __ , 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011). See, e.g., Ruhe v. Masimo Corp., No. SACV 11-00734-CJC(JCGx), 2011 U.S. Dist LEXIS 104811, at *4-5 (C.D. Cal. Sept. 16, 2011). The issue is whether the Armendariz requirements are preempted by the FAA. This Court, however, need not decide the issue now because assuming that the requirements are *not* preempted by the FAA, the arbitration agreement at issue in this case satisfies all the requirements.

### C. Dismissal is Appropriate

The final matter for the Court to resolve is determining whether this case should be dismissed in its entirety or stayed pending resolution of arbitration. The FAA authorizes a court to grant a stay pending resolution of arbitration. See 9 U.S.C. § 3. However, nothing in the FAA limits the court's authority to dismiss a case, especially when "all claims are barred by an arbitration clause." Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988). See Ngrampa v. MailCoups, Inc., 469 F.3d 1257, 1276 (9th Cir. 2006) ("If . . . [a court] decides the arbitration agreement is valid and enforceable, then it should stay or dismiss the action pending arbitration . . . .").

The Court finds that dismissal of this case is appropriate for two reasons. First, all the claims asserted by Burnett in this case must be arbitrated, and there does not appear to be anything left for the Court to resolve once arbitration has been completed. Second, under the express terms of the parties' arbitration agreement, dismissal is contemplated under these circumstances. The agreement provides: "If a party files a lawsuit in court to resolve claims subject to arbitration, both agree that *the court shall dismiss the lawsuit* and require the claim to be resolved through the [SIS] program." (Doc. 6-2 at 20) (emphasis added). This term must be afforded weight. See Chiron, 207 F.3d at 1130 (if the arbitration agreement is valid and encompasses the claims asserted, "the [FAA] requires the court to enforce the arbitration agreement *in accordance with its terms*.") (emphasis added).

## IV. CONCLUSION

In sum, the arbitration agreement between Burnett and Macy's is valid and encompasses all the claims asserted by Burnett in this case. Accordingly, the Court:

1. GRANTS the motion to compel arbitration; and
2. DISMISSES this action without prejudice to reinstatement should further proceedings be necessary following arbitration.

IT IS SO ORDERED.

**Dated:    October 7, 2011**              /s/ Lawrence J. O'Neill
                                           UNITED STATES DISTRICT JUDGE